Good morning, Your Honors. Paul Regani of Orrick, Harrington, and Sutcliffe, and through this court's pro bono program, I represent the petitioner, Richard Olawale-Ayinde. There are several issues that are raised in Mr. Olawale's petition, including credibility errors made by the IJA and resulting wrongful denial of asylum, withholding, and prevention against torture relief. But I believe the primary issue is the question of the aggravated felony, and it's to that issue that I'd like to devote my time, unless the court has any questions, as to the other issues. There's also been a motion to dissolve the stay of removal that's currently in place that's been referred to this court for ruling, and I'll very briefly just address that at the end of my argument. As to the aggravated felony question, the government here did not meet its burden of proving by clear and convincing evidence that the crimes of which Mr. Olawale was convicted were offenses in which the loss to the victim exceeded $10,000. Did he, in the plea hearing and the plea agreement, concede to more than $10,000? Your Honor, I'll answer that question in two ways. How about a yes or no? No is the answer. But one of the issues that we have is that the plea agreement, if it was documented, I'm not sure if it was documented at all, but at the very least, the transcript of the plea hearing was not introduced by the government into the record before the immigration judge. And that's a noticeable omission. I mean, in almost all aggravated felony cases, the plea agreement is the document that the immigration courts turn to first in figuring out just what was the specific offense that the individual was convicted of. Well, you know, now we're not under modified categorical. You agree with that? Is that right? It clarifies to us that we're not limited to the small group of documents and that sort of approach. And so when I look at the judgment, which says guilty plea bank fraud is charged in Counts 1-7 of the indictment, which even under modified categorical would incorporate the Counts 1-7. And when I look at that in the indictment, it seems to list all of these incidents with victims and dollar figures. And then there's the restitutionary order attached to the judgment. So I think even under modified categorical, it would be hard to say that it doesn't indicate the amount that was over $10,000. I'm not sure I understand your argument to the contrary. Well, one of the problems that we have in comparing the amounts listed in the indictment with the amounts of the restitution order is that there's no match. The amounts in the indictment and the restitution order both do give numbers that arrive over $10,000. But there's no way to tell from what was ordered against Mr. Oluwole and in terms of restitution how much of that was part of the charges leveled in the indictment and how much of it was due to conduct that is separate from those charges. But doesn't the first pages, which is incorporated of the indictment, which lists over $10,000, why isn't that sufficient? Well, it's not sufficient for a couple of reasons. First, as Judge Fletcher, her question prompted earlier, the plea agreement itself wasn't included in the record. And so there was no way to consider whether that as-charged description was meant to encompass every fact that was charged in the indictment. And in fact, as this court noted in considering Mr. Oluwole's criminal appeal, and the government has not contested at all in the course of this appeal, he did not plead consistently with what was charged in the indictment and specifically did not plead as to what the amount of loss was. And so if there's an ambiguity there as to whether or not he did plead to the amount of loss as to everything that was set out factually in the indictment, then we can't conclude just on the basis of the words as-charged if there is an exact match. And I'll give the court an example. In count four of the indictment, there's a charge of a fraudulent check in the amount of $8,050 that was drawn on a Washington Mutual Bank. And if you look to the restitution order, Washington Mutual is listed as one of the entities that received restitution. And it received restitution in the amount of $154. And so there's a clear discrepancy between what the amount was that was charged in the indictment and then what the amount was that was provided in restitution. And that discrepancy matches all the way through the counts. There's no single line item in the restitution order that matches any of the dollar descriptions listed in the indictment. And so in light of that discrepancy, the easy way to have resolved it would have been to resort to the transcript of the plea agreement. And that transcript wasn't in the record. And it was the government's burden to prove the conviction by clear and convincing evidence. And in the absence of the plea agreement, the government could not have met that burden. So the documents, in your view, the documents that we have raise some doubt. Is it just the documents we have or just the knowledge that there's a plea agreement or the knowledge that there's an appeal pending? But they raise some doubt, and so they can't amount to clear and convincing evidence. Is that your position? That's essentially the position, Your Honor. It's that, you know, the burden is to determine specifically if one of the crimes of which he was convicted and not conduct outside of those crimes, but specifically the conduct responsible for his counts of conviction amounted to loss in excess of $10,000. And the documents on their face don't get you there. And the fact that Mr. Oluwole testified to the immigration judge that he had an appeal pending specifically to determine what the amount of loss was or specifically to contest the amount of loss provided further ambiguity and further defeated the government's ability to meet their clear and convincing evidence standard. Can I ask you also about the CAT deferral claim? So let's assume that we disagree with you on this first issue. Assuming that your client is credible, it wasn't clear to me why what appears to be a voluntary putting yourself forward for sacrifice as part of your religion constituted torture as we've defined it on account of one of the protected grounds. Could you walk me through that and help me understand that? Certainly, Your Honor. And I'd like to start first with the question of voluntariness. One of the things that Mr. Oluwole testified to is that he was sort of stuck between a rock and a hard place. If he went back and submitted himself as the tenants of religion called for, then he would have been next in line to be sacrificed. And if he went back and if he tried to avoid the obligations of his religion, then the rules governing that practice would have called for his death. But I saw, I read through that transcript very carefully, and I didn't see him ever suggest that there would be anything other than moral pressure on him to make good his commitment. I mean, you had one sense that, well, they'd make me anyway. But then when the IJ went on to explore it, it was, well, because, you know, I'm the son and, you know, I didn't see anything saying that, well, if you refuse to be a sacrifice, they'll come and kill you anyway. So maybe you could point that to me. I can't cite the specific page to you in the record on that question, but I do believe that his testimony in the discussion was consistent on saying that he was stuck between the rock and the hard place. That if he did refuse or if he tried to avoid, that he was next in line. And one of the reasons the additional pieces of testimony that supported that is there was extensive discussion in the record about the other family members that he may or may not have had. And the IJ was kind of searching for somebody else that may be able to take his place. And during the testimony, he testified that there was, in fact, no one else to take his place. But even his description of the rituals was his cousins just going off in the canoe, willingly with the elder to the island somewhere. I mean, there was no indication of enforcement of your contract to be a sacrifice. It's true that his description didn't involve depictions of force. It may just have been that he wasn't privy to viewing that, that by the time it came for his cousins to go down the river, so to speak, that the force had already been put in place and their fate was written. Do we have any concrete evidence that anybody, there have been any human sacrifices? Your Honor, there's no death certificate or, you know, bones of anyone who may have been sacrificed. Nothing got into the news? Nowhere do they say that the ex-individual, we assume, was sacrificed? There are news articles about the practice generally. And Mr. Oluwole submitted those to the court, as well as some letters from relatives about the practice generally. But none of the articles, and no evidence aside from his specific testimony, mentioned any individuals. Your Honor, I just don't have anything else. It seems a little far-fetched in this day and age that human sacrifices go on. Well, I won't pretend to understand the way that people treat each other all over the place, but that certainly was his testimony, and there was no reason that the IJ articulated that would be recognized by this Court as a justified reason to discredit it. Thank you. Ms. Siegel. Good morning. May it please the Court, Jessica Siegel for Respondent Eric Holder. This case does present numerous issues to the Court, but the Court should dismiss this case for lack of jurisdiction with respect to the aggravated felony finding, because the agency presented clear and convincing evidence that Mr. Oluwole was convicted of an aggravated felony of bank fraud, and the amount of loss was well over $10,000 to the victims. Can we make a determination that this is accurate? Yes, it's very accurate, Your Honor, as to the amount of loss was well over $10,000. The indictment lists the charges one through seven. My question was really, you say we don't have jurisdiction to even look at this. Oh, no. Let me clarify. I'm sorry. This Court has jurisdiction to determine its own jurisdiction, essentially. I thought you had withdrawn that argument. I'm looking for 28J letters on the basis of Lemus Galvin. That's with respect to the Convention Against Torture claim. We did withdraw the argument saying that the Court does not have jurisdiction to consider that. But in terms of the criminal conviction and the charges of removability, this Court's jurisdiction extends solely to determining whether or not he was convicted of an aggravated felony. And once it reaches that decision, then it no longer has jurisdiction over the petition for review, barring the CAC claim, which I'm happy to discuss about separately. But once it decides that this conviction was an aggravated felony, under 8 U.S.C. 1252 H.U.C., this Court lacks jurisdiction. But we do determine whether, in fact, it's an aggravated felony. Correct. And in determining that, this Court looks to the circumstance-specific approach that was enumerated in Nijuan. And under that approach, for example, in Nijuan, the individual was convicted of bank fraud under 18 U.S.C. 1344, just as in this case. And between the indictment and the restitution order, just as we have in this case, the amount of loss was very clearly over that $10,000 threshold. This case, Nijuan, directly applies, and it's very instructive. If you look at the indictment in this case, it specifies an amount of approximately $70,000 in loss. The restitution order, he then pled guilty to the indictment. And the judgment, which is on page 383 of the record, specifically says that he pled guilty as charged in counts 1 through 7. Then the restitution order refers to counts 1 through 7 and enumerates over $1 million in loss to the victims. It's irrelevant that these numbers are not the same. In the circumstance-specific approach, this Court is instructed to look to the amount of loss for the entire crime, not necessarily what was included in the charge. But what's the effect of his appeal pending that the amounts were erroneous? None. His appeal was only to his sentence. And so the sentence and the- That encompasses the order of restitution. Perhaps, but even looking at the indictment alone and the judgment that he pled guilty to those amounts, that's still well over $10,000. And the sentence is now final. The restitution order is now final. Except there's an appeal pending? No, there's no longer an appeal pending. No, this Court denied his appeal in, I believe, 2007. And why didn't the government introduce the plea colloquy in this case? I have no answer to that. I'm sorry. I don't have it. As counsel insinuates in either a brief or a motion at some point in this case, was that it's in our possession. I do not have the plea colloquy. All I have are the documents that were submitted as a part of the certified administrative record and that are, you know, a part of the appeal that are public record. There was no plea agreement. He did not plea to a plea agreement. He pled guilty on his own accord. So there's no evidence that actually exists in my knowledge. I'm sure the transcript exists somewhere in his criminal case, but it was not ever a part of the administrative record. So once this Court has determined that Mr. Oluwole was convicted of an aggravated felony, it follows that the agency's denial of asylum and withholding of removal based on his crimes was supported by substantial evidence. We can still look at the cat claim. Yes. And under the cat claim, Mr. Oluwole, the record does not compel reversal of the agency's finding that Mr. Oluwole failed to meet his burden in establishing that it was more likely than not that he will be subjected to torture in Nigeria. That's a very, very high standard. The only evidence he produced was his own testimony, a letter from an uncle that was unauthenticated, two generic Internet articles about the Oboni religion in general, none of which establishes that Mr. Oluwole himself will be forcibly subjected to torture in Nigeria. He may have a subjective fear, but there's no evidence of his objective fear of torture in that country. So for that reason, the Court should find that the record does not compel reversal of the agency's denial of deferral of withholding. Regarding the substantive motions that have been referred to this panel, there are three. The first is that will need to be resolved at some point. The first is, well, I'll start with this. Many of them are moot in light of the fact that we're now at argument. One that was referred was referred prior to rebriefing in this case, and it was to strike portions of the motion to lift the stay of proceedings back in, I believe, 2008. Now that we have rebriefed and there's been multiple supplemental filings, we present that that argument is now moot. The second is to dissolve the stay of removal in this case. I do rest upon the pleadings in that issue, other than to also add that now that this case is before your honors, that any decision on that motion will also become moot once it issues an order and mandate is issued. Then the stay of removal will either continue until mandate is issued or if this court wishes to address that motion independently beforehand, it, of course, can do so, but that stay will continue until mandate issues. And thirdly, there is a motion to take judicial notice of two appellate briefs in the context of Mr. Olawale's criminal appeals. Simply, a respondent just opposes that as those documents are not typical for judicial notice, especially in immigration proceedings where this court's review is limited to the certified administrative record. Are those the appeal of the sentence? Yes. The one that's now been final. Final. Okay. Thank you. Thank you. Thank you. I have a minute for rebuttal. Your honors, I'd like to start by addressing two things about the Nijuan case that counsel mentioned that I don't believe are consistent with the Nijuan opinion. First, as counsel suggested, that in Nijuan it was just the indictment and the restitution order that was looked to by the Supreme Court. And that omits a key fact, which is that the petitioner in that case stipulated to an amount of loss, and that's consistent with how several other of the $10,000 loss cases have been resolved, where a petitioner has stipulated either as part of the plea agreement or as part of sentencing that he caused an amount of loss in excess of $10,000, the court says, well, clearly that is enough. Where the petitioner, in fact, has not stipulated to that amount, the courts have very rarely found that that's enough and never in this circuit have found that that's enough. And that's a key distinguishing factor in our cases here. And the other difference that I would suggest is the circumstance-specific approach is not as broad as all conduct connected in any way with the crime. Nijuan was careful to say the circumstance-specific approach still focuses only on the circumstances of the crime of conviction and was careful to point out that circumstances of conduct not charged or circumstances of conduct that didn't actually encompass the crimes of conviction are not part of the consideration. Unless the court has any other questions. Thank you. Thank you. I think you deserve special thanks since you were appointed as pro bono counsel. We appreciate that. Thank you. Matter submitted.
judges: B. Fletcher, Paez, Ikuta, Cjj